UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  OCT 1 2 2018  ★

**BROOKLYN OFFICE**

---

SHIVA STEIN,                                          :

                              Plaintiff,              :

                    v.                                :

AUTOMATIC DATA PROCESSING, INC.,                      :

                              Defendant.              :

---

CIVIL ACTION NO. _____

CV 18-5717

ROSS, J.

TISCIONE, M.J.

## COMPLAINT

Plaintiff, Shiva Stein, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

### NATURE OF THE ACTION

1.      This is a direct stockholder action under Section 14(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(a) (the "Exchange Act") for injunctive relief.

2.      Plaintiff, a stockholder in Automatic Data Processing, Inc. ("ADP" or the "Company"), seeks to require ADP to comply with the disclosure rules promulgated by the United States Securities and Exchange Commission ("SEC") under the Exchange Act, including 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) ("Item 10(a)(1)") and the antibundling rules promulgated by the SEC, including 17 C.F.R. § 240.14a-4(a)(3) & (b)(1) (the "Antibundling Rules").

3.      Item 10(a)(1) requires:

Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:

(a) Plans subject to security holder action.

(1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

4.      The Antibundling Rules require that:

(a) The form of proxy…

(3) Shall identify clearly and impartially each separate matter intended to be acted upon, whether or not related to or conditioned on the approval of other matters, and whether proposed by the registrant or by security holders.

\*\*\*

(b)(1) Means shall be provided in the form of proxy whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or disapproval of, or abstention with respect to each separate matter referred to therein as intended to be acted upon, other than elections to office and votes to determine the frequency of shareholder votes on executive compensation pursuant to § 240.14a–21(b) of this chapter….

In sum, these rules require that a proxy statement and proxy card allow shareholders to separately vote on each matter presented.

5.      ADP has failed to comply with these rules with regard to Management Proposal 3, which requests that stockholders approve a compensation plan it calls the 2018 Omnibus Award Plan ("Omnibus Plan").  Management Proposal 3 was furnished to shareholders in the September 20, 2018 Proxy Statement ("2018 Proxy Statement") and the vote on this plan is scheduled for a stockholder vote at the Company's November 6, 2018 annual stockholders' meeting.

6.      The reason ADP has failed to comply with these rules is that through the same vote for the Omnibus Plan, ADP is also asking stockholders to approve shares for

separate sub-plans ("Sub Plans") that permit offerings of grants to employees of certain Designated Foreign Subsidiaries and other special purpose grants in connection with certain transactions. Offerings under the Sub Plans may be made

2

in particular locations outside the United States of America and shall comply with local laws applicable to offerings in such foreign jurisdictions.

7.      There are two problems with including a vote on the "Sub Plans" within Management Proposal 3. First, the *2018 Proxy Statement provides absolutely no description of the "Sub-Plans,"* thus violating Item 10(a)(1). Second, the only statement concerning the "Sub Plans" notes, "The [Omnibus] Plan shall be a *separate and independent* plan from the Sub Plans, but the total number of shares of Common Stock authorized to be issued under the Plan applies in the aggregate to both the Plan and the Sub Plans." *Given that the "Sub Plans" are "separate and independent" from the Omnibus Plan, there must be a separate vote on the "Sub Plans" as required by the Antibundling Rules*.

8.      Finally, while Management Proposal 3 does describe some aspects of the Omnibus Plan – unlike its complete lack of description of the Sub Plans – it still fails to provide all of the information required by Item 10(a)(1). To wit, while "consultants or advisors" are eligible for awards under the Omnibus Plan, there is no description of "the approximate number of persons in each such class" of consultants and advisors as required by Item 10(a)(1).

9.      Plaintiff seeks an injunction to prevent a stockholders' vote on Management Proposal 3 until a separate vote on the "Sub-Plans" is provided and until all the information required by Item 10(a)(1) with regard to these plans is provided to stockholders.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

11.      In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

3

12.     Venue is proper in this district because, as allowed under Section 27(a) of the Exchange Act, this district is where the violation at issue in this case occurred because the Plaintiff is a resident of this district.

## PARTIES

13.     Plaintiff is, and has been continuously since June 16, 2014, a holder of Automatic Data Processing, Inc. common stock.

14.     Automatic Data Processing, Inc. (ADP or the Company) is a corporation organized under the laws of the State of Delaware.  The Company's last fiscal year ended June 30, 2018.  As of July 31, 2018, it had 438,082,756 shares of common stock outstanding.  ADP's common stock is traded on the NASDAQ Global Select Market under the symbol ADP.  According to its 2018 SEC Form 10-K, ADP's business is the provision of cloud-based human capital management solutions to businesses.

## WRONGFUL ACTS AND OMISSIONS

15.     ADP has scheduled the annual stockholders' meeting for November 6, 2018.  On September 20, 2018, it furnished its stockholders with the 2018 Proxy Statement to solicit their proxies for four management proposals and to transact any other business that may properly come before the annual meeting.

16.     Management Proposal 3 requests that stockholders approve what it calls the 2018 Omnibus Award Plan.

17.     There is no mention of the "Sub-Plans" within the proposal itself.  However, the proposals states, "A copy of the 2018 Omnibus Award Plan is attached hereto as Appendix B. The following summary of the material features of the 2018 Omnibus Award Plan is qualified in its entirety by reference to the complete text of the 2018 Omnibus Award Plan."

4

18.     In the first paragraph of Appendix B, which is titled "Purpose," the 2018 Proxy Statement explains:

> This Plan document is an omnibus document which includes, in addition to the Plan, separate sub-plans ("Sub Plans") that permit offerings of grants to employees of certain Designated Foreign Subsidiaries and other special purpose grants in connection with certain transactions. Offerings under the Sub Plans may be made in particular locations outside the United States of America and shall comply with local laws applicable to offerings in such foreign jurisdictions. The Plan shall be a separate and independent plan from the Sub Plans, but the total number of shares of Common Stock authorized to be issued under the Plan applies in the aggregate to both the Plan and the Sub Plans.

19.     This vague reference to the "Sub Plans" is the only indication in the entire 131-page 2018 Proxy Statement that a vote on Management Proposal 3 will also be used as tacit approval of the "Sub Plans."

20.     The reason ADP is requesting stockholder approval of the Omnibus Plan and the "separate and independent" "Sub Plans" is because ADP trades on the NASDAQ Global Select Market. NASDAQ Rule 5635(c) states that "Shareholder approval is required prior to the issuance of securities when a stock option or purchase plan is to be established or materially amended or other equity compensation arrangement made or materially amended."

21.     The Interpretive Memorandum that accompanies this rule (IM-5635-1) states,

> Employee ownership of Company stock can be an effective tool to align employee interests with those of other Shareholders. Stock option plans or other equity compensation arrangements can also assist in the recruitment and retention of employees, which is especially critical to young, growing Companies, or Companies with insufficient cash resources to attract and retain highly qualified employees. However, these plans can potentially dilute shareholder interests. ***Rule 5635(c) ensures that Shareholders have a voice in these situations, given this potential for dilution.***

22.     IM-5635-1 goes on to state "As a general matter, when preparing plans and presenting them for shareholder approval, Companies should strive to make plan terms easy to

5

understand." It should go without saying that providing any description of the "separate and independent" "Sub Plans" would be the first step in making them "easy to understand."

23.    Because Management Proposal 3 concerns a stockholder vote on compensation plans, the rules and regulations of the SEC require the 2018 Proxy Statement to disclose certain information concerning ADP's Omnibus Plan and the Sub-Plans. Specifically, Item 10(a)(1) of SEC Schedule 14A, 17 C.F.R. § 240.14a-101 states:

> Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:
>
> (a)    Plans subject to security holder action.
>
> (1)    Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

24.    But the 2018 Proxy Statement omits these disclosures entirely as to the "Sub-Plans" and it is materially incomplete as to the Omnibus Plan, which states that "consultants or advisors" are eligible for awards under the Omnibus Plan, but provides no description of "the approximate number of persons in each such class" of consultants and advisors as required by Item 10(a)(1).

25.    This contravention of the SEC rules renders the 2018 Proxy Statement unlawful under § 14(a) of the Exchange Act.

26.    Moreover, the Antibundling Rules require distinct voting items on "each separate matter." 17 C.F.R. § 240.14a–4(a)(3) & (b)(1). Given that the "Sub-Plans" are described in the Omnibus Plan as being "separate and independent" from the Omnibus Plan, there is no question that these "Sub-Plans" should be voted on separately.

27.    Many companies have sub-plans based on the fact that they operate in different countries with different regulatory schemes, but they are required to separately describe and

provide for shareholder votes on such plans.  As examples, Microsoft Corporation had a separate vote on its French Sub Plan in 2016, Pfizer had a separate vote on its French Sub Plan in 2018, Rayonier Advanced Materials, Inc. had a separate vote on its French Sub Plan in 2018, International Flavors and Fragrances Inc. had a separate vote on its French Sub Plan in 2017, and Schlumberger N.V. had a separate vote on its French Sub Plan in 2018.

28.     Given the above, a separate vote on the "Sub-Plans" should be provided to ADP stockholders.

## COUNT I
### (Exchange Act Violations in Management Proposal 3)

29.     Paragraphs 1 through 28 state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

30.     As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law.  She will suffer irreparable harm in the form of an uninformed vote on the Omnibus Plan proposal if no action is taken to ameliorate this harm. She will also be forced to vote on the "separate and independent" "Sub Plans" that are part of this proposal without any description of the "Sub Plans" and with them improperly bundled with the Omnibus Plan.

31.     To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by Item 10(a)(1) with regard to the Management Proposal 3.  In addition, a separate vote on the "Sub Plans" with a full description of these is required.

32.     Consequently, ADP should be enjoined from presenting the Omnibus Plan proposal for a stockholder vote at the November 6, 2018 annual meeting or certifying or

otherwise accepting any vote cast, by proxy or in person, by or on behalf of any ADP stockholder in connection with the Omnibus Plan proposal in ADP's Proxy Statement.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff requests the following relief:

A.      A preliminary and permanent injunction, enjoining ADP from

(i) certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any ADP stockholder in connection with the Omnibus Plan proposal in ADP's Proxy Statement;

(ii) presenting the Omnibus Plan for a stockholder vote at the November 6, 2018 annual meeting;

(iii) bundling the "Sub Plans" with the Omnibus Plan proposal in ADP's Proxy Statement

(v) otherwise proceeding at its November 6, 2018 annual shareholders meeting or at any other time in a manner inconsistent with Item 10(a)(1).

(vi) otherwise proceeding at its November 6, 2018 annual shareholders meeting or at any other time in a manner inconsistent with the Antibundling Rules;

B.      Awarding such other and further relief as this Court deems just and proper.

Dated: October 12, 2018

                                        **BARRACK, RODOS & BACINE**


                                        By:    /s/ A. Arnold Gershon
                                               A. Arnold Gershon
                                               Michael A. Toomey
                                               11 Times Square, 640 8th Ave.
                                               10th Floor
                                               New York, NY 10036

Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Attorneys for Shiva Stein*